CENTER FOR DISABILITY ACCESS
Mark Potter, Esq., SBN 166317
Phyl Grace, Esq., SBN 171771
Dennis Price, SBN 279082
Mail: PO Box 262490
 San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
 San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com
 Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Schutza**,<br><br>   Plaintiff,<br><br>   v.<br><br>**2815 CDRS LLC,** a California Limited Liability Company,<br><br>   Defendants. | Case No. 3:14-CV-1067-CAB-NLS<br><br>**Memorandum of Points and Authorities in Support of Plaintiff's Motion for an Award of Attorney's Fees**<br><br>Hon. Cathy A. Bencivengo |

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................1

II. ENTITLEMENT TO FEES ......................................................................1

III. ESTABLISHING A FAIR FEE AWARD .................................................2

    A. Hourly Rates ....................................................................................2

    B. Hours Reasonably Expended ...........................................................7

IV. HENSLEY FACTORS ........................................................................... 10

    A. Time and Labor Required .............................................................. 11

    B. Novelty and Difficulty of Issues ................................................... 11

    C. Skill Required to Perform Legal Service ...................................... 11

    D. Preclusion of Other Work ............................................................. 12

    E. Customary Fee ............................................................................... 13

    F. Fixed or Contingent Fee ................................................................ 13

    G. Time Limitations ........................................................................... 13

    H. Amount Involved and Results Obtained ...................................... 13

    I. Experience and Ability of Attorneys ............................................ 14

    J. Undesirability of the Case ............................................................. 14

    K. Nature and Length of Professional Relationship with Client . 14

    L. Awards in Similar Cases. .............................................................. 15

V. CONCLUSION ....................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Blackwell v. Foley*,
   724 F. Supp. 2d 1068 (N.D. Cal. 2010) ............................................. 2, 7

*Boemio v. Love's Restaurant*,
   954 F.Supp. 204 (S.D. Cal. 1997) ......................................................... 14

*City of Sacramento v. Drew*,
   207 Cal. App. 3d 1287 (1989) ................................................................ 1

*Copeland v. Marshall*,
   641 F.2d 880 (1980) ................................................................................ 7

*Hansen v. Deercreek Plaza, LLC*,
   420 F.Supp.2d 1346 (S.D.Fla 2006) ................................................... 5, 7

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ............................................................... 1, 2, 7, 10

*Jankey v. Poop Deck*,
   537 F.3d 1122 (9th Cir. 2008) ................................................................ 1

*Koire v. Metro Car Wash*,
   40 Cal.3d 24 (1985) ......................................................................... 13, 14

*Lindy Bros. Builders, Inc. of Phila. v. American Radiator*,
   487 F.2d 161 (3rd Cir 1973) .................................................................. 7

*Margolin v. Regional Planning Comm'n*,
   134 Cal.App.3d 999 (1982) .................................................................... 5

*PLCM Group, Inc. v. Drexler*,
   22 Cal.4th 1084 (2000) ........................................................................... 3

*San Bernardino Valley Audubon Society, Inc. v. County of San Bernardino*,
   155 Cal.App.3d 738 (1984) .................................................................... 2

*Serrano v. Priest*,
   20 Cal.3d 25 (1977) ................................................................................ 7

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
  896 F.2d 403 (9th Cir. 1990) ................................................................. 5
*Van Gerwen v. Guarantee Mutual Life*,
  214 F.3d 1041 (9th Cir. 2000) ............................................................ 10
*Wehr v. Burroughs Corp.*,
  477 F.Supp. 1012 (E.D.Pa. 1979) ......................................................... 2
*Welch v. Metropolitan Life Ins. Co.*,
  480 F.3d 942 (9th Cir. 2007) ................................................................ 3
*Woodland Hills Residents Ass'n., Inc. v. City Council*,
  23 Cal.3d 917 (1979) ............................................................................ 2

**Statutes**

42 U.S.C. § 12205 .................................................................................. 1
Cal. Civ. § 52(a) ............................................................................... 1, 13

## I. PRELIMINARY STATEMENT

Mr. Schutza is a person with a disability. He is a paraplegic who cannot walk and who uses a wheelchair for mobility. He sued the defendants as the commercial property owners of the property wherein a number of public accommodations/businesses are located for failure to provide accessible parking, although the law had required it for 24 years. During the course of the lawsuit, the defendant brought their parking into compliance with civil rights laws. Plaintiff then prevailed on his motion for summary judgment. The plaintiff now moves the Court for an award of attorney's fees.

## II. ENTITLEMENT TO FEES

Under the American with Disabilities Act, attorney's fees are available to a prevailing party. 42 U.S.C. § 12205. Additionally, under the Unruh Civil Rights Act, a defendant "is liable for" any attorney fees" suffered by any person denied the rights" provided for under Unruh. Cal. Civ. § 52(a). Successful litigants are entitled to reasonable attorney fees "to ensure effective access to the judicial process for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). "If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Consequently, recovery is the rule rather than the exception." *Jankey v. Poop Deck*, 537 F.3d 1122, 1131 (9th Cir. 2008) (internal citations omitted).

This is a civil right entitlement, not a windfall. "It must be remembered that an award of attorneys' fees is not a gift. It is just compensation for expenses actually incurred in vindicating a public right." *City of Sacramento v. Drew*, 207 Cal. App. 3d 1287, 1304 (1989).

Case 3:14-cv-01067-CAB-NLS   Document 20-1   Filed 03/02/15   Page 6 of 19

The "fundamental objective" of attorney fee statutes is "to encourage suits effectuating a strong policy by awarding **substantial attorney's fees** ... to those who successfully bring such suits . . . ." *Woodland Hills Residents Ass'n., Inc. v. City Council*, 23 Cal.3d 917, 933 (1979) (emphasis added). To accomplish this, the award must be large enough "to entice competent counsel to undertake difficult public interest cases." *San Bernardino Valley Audubon Society, Inc. v. County of San Bernardino*, 155 Cal.App.3d 738, 755 (1984). Thus, there is a "requirement of an award of substantial attorney fees" in these disability access civil rights cases. *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1076 (N.D. Cal. 2010) (a disability access case involving both the ADA and Unruh Civil Rights Act).

In the present case, the plaintiff obtained a judgment in his favor and is a prevailing and successful party. He is entitled to the fees submitted as exhibit 2.

### III.   ESTABLISHING A FAIR FEE AWARD

The documentation submitted in support of a request for attorney fees should be sufficient to satisfy the court, or indeed a client, that the hours expended were actual, non-duplicative and reasonable and to appraise the court of the nature of the activity and the claim on which the hours were spent. *See Hensley*, 461 U.S. at 437; *Wehr v. Burroughs Corp.*, 477 F.Supp. 1012, 1016–18 (E.D.Pa. 1979), *modified on other grounds* at *Wehr v. Burroughs Corp.*, 619 F.2d 276 (3rd Cir. 1980). The billing statements attached as exhibit 2 meet this standard.

#### A.   Hourly Rates

A reasonable hourly rate reflects the skill and experience of the lawyer, including any relevant areas of particular expertise, and the nature of the work performed. *See Hensley*, 461 U.S. at 433-34. The reasonable market value of the

2

PNA: Motion for Attorney's Fees                              3:14-CV-1067-CAB-NLS

attorney's services is the measure of a reasonable hourly rate. *PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1094 (2000). This standard applies regardless of whether the attorneys claiming fees charge nothing for their services, charge at below-market or discounted rates, represented the client on a straight contingent fee basis, or are in house counsel. *Id.*; *see also Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007).

In this case, Mr. Potter chargeS $425 per hour for his ADA work. Ms. Grace charges $350. Ms. Masanque and Lockhart each charge $200 per hour. These rates are fair.

Mark Potter founded the Center for Disability Access, has devoted more than 95% of his practice to disability issues for almost 20 years. He was a former officer of the California's for Disability Rights, Chapter Number One—the oldest and most prestigious disability civil rights advocacy organization in California, as well as a board member of the prestigious Southern California Rehabilitation Services. He has given ADA seminars throughout the state of California and published in numerous disabled rights periodicals. He has litigated over 2,000 disability cases. His expertise and experience with ADA cases is almost unparalleled in California. He has been interviewed on CNN as an ADA legal expert.

Phyl Grace has been practicing for twenty years. She has focused exclusively on disability access litigation for the last eight years. She has handled trials, taken depositions, drafted motions, and otherwise litigated these civil rights cases.

Attorney Amanda Lockhart is qualified to bill at $200 per hour. Ms. Lockhart graduated from California Western School of Law in 2011. While in law school, Ms. Lockhart served as an elected member of the Student Bar Association and as a staff writer for the school's newspaper, The Commentary. Ms. Lockhart excelled at oral advocacy, earning the title of 'Distinguished

Advocate' for her appellate oral advocacy skills. She also earned an 'Am Jur' award in the invitation-only Advanced Appellate Skills class. Ms. Lockhart has clerked for a celebrated private firm, handling matters including a multi-state elder abuse case as well as a case involving novel theories of fraud and negligence as they relate to international surrogacy agreements. Ms. Lockhart also served as a student liaison for the Dean of Admissions.

Attorney Isabel Masanque is qualified to bill at 200 per hour. She graduated cum laude in 2012 from California Western School of Law. During law school, Ms. Masanque received an AmJur award in Public Interest law and was a member of California Western's Pro Bono Honors Society. She was also a writer and editor for California Western's two law review journals. Ms. Masanque's article, "*Progressive Realization Without the ICESCR: The Viability of South Africa's Socioeconomic Rights Framework, and its Success in the Right to Access Health Care*" was accepted for publication in California Western's International Law Journal. She was also published in the Bulletin of Health Law and Policy in 2012 for her article on the Generic Drug User Fee Act. Ms. Masanque also displayed her oral advocacy skills during law school, becoming a semi-finalist at California Western's Legal Skills Appellate Competition, and successfully defending a defendant in a criminal jury trial during her internship at the San Diego County Public Defender's Office, under the supervision of a Deputy Public Defender through the Practical Training of Law Students Program. Ms. Masanque began her career at the Center for Disability Access in 2012 as a legal intern where she participated in and was trained extensively on handling discovery issues. She was then admitted to the Bar in 2013, and continues to oversee discovery matters as an attorney at the firm.

Plaintiff's attorneys' disability rights work has helped to shape ADA law with numerous, precedent setting opinions including, but not limited to the following published cases: *Fortyune v. City of Lomita*, 766 F.3d 1098 (9th Cir.

2014); *Cortez v. City of Porterville*, 5 F.Supp.3rd 1160 (E.D. Cal. 2014); *Johnson v. Wayside Prop., Inc.*, -- F.Supp.2d -- , 2014 WL 4276164 (E.D. Cal. 2014); *Daubert v. City of Lindsay*, --- F.Supp.2d ---, 2014 WL 3938762 (E.D. Cal. 2014); *Munson v. Del Taco, Inc.*, 46 Cal.4th 66 (2009); *Nicholls v. Holiday Panay Marina, L.P.*, 93 Cal.Rptr.3d 309 (Cal. App. 4th 2009); *Ortiz v. Accredited Home Lenders, Inc.*, 639 F. Supp. 2d 1159 (S.D. Cal. 2009); *Kittok v. Leslie's Poolmart, Inc.*, 687 F. Supp. 2d 953 (C.D. Cal. 2009); *Deanda v. Sav. Inv., Inc.*, 267 F. App'x 675, 676 (9th Cir. 2008); *Miller v. California Speedway Corp.* (9th Cir. 2008) 536 F.3d 1010; *Munson v. Del Taco, Inc.*, 522 F.3d 997 (9th Cir. 2008); *Grove v. De La Cruz*, 407 F. Supp. 2d 1126 (C.D. Cal. 2005); *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075 (9th Cir. 2004); *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133 (9th Cir. 2002); *Wyatt v. Ralphs Grocery Co.*, 65 Fed.Appx. 589 (9th Cir. 2003); *Botosan v. Paul McNally Realty*, 216 F.3d 827 (9th Cir. 2000); *Wyatt v. Liljenquist*, 96 F. Supp. 2d 1062 (C.D. Cal. 2000).

Rates awarded to the claiming attorneys in previous actions are good evidence of the appropriate market rate. (*See e.g. Margolin v. Regional Planning Comm'n*, 134 Cal.App.3d 999, 1005 (1982) [where the court rejected defendants' argument that rates awarded plaintiff's counsel in prior litigation were not relevant, stating that court awards are "obviously relevant" and that the "most analogous evidence" would be fees sought and deemed reasonable by courts in other cases."]). Also, in *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990), the court held, "rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."). In *Hansen v. Deercreek Plaza, LLC*, 420 F.Supp.2d 1346, 1350 (S.D.Fla 2006), the court held that previous fee rulings for the fee applicant for comparable cases is "satisfactory evidence" in an ADA case.

On March 17, 2011, United States District Judge Stephen Wilson considered plaintiff's counsel's qualifications,[1] the expert opinion and other evidence and granted plaintiff's counsels requested rates—the same rates requested in this case. (Exhibit 7). As stated above, this is evidence of plaintiff's counsels' current market rate. Even prior to the time period that this case was litigated, six more judges entertained fee motions and awarded plaintiff's counsel's requested rate including United States District Judge Michael W. Fitzgerald (June 24, 2014); United States District Judge Dale S. Fischer (February 27, 2013); United States District Judge Christina Snyder (August 13, 2012); United States District Judge Dean D. Pregerson (May 25, 2012); United States Magistrate Judge Ruben B. Brooks (February 13, 2012), and Los Angeles Superior Court Judge David S. Milton (May 6, 2011); (Exhibits 8-13). Moreover, plaintiff's counsel had experts conduct a review of prevailing market rates for ADA attorneys with similar qualifications and he opined that plaintiff's counsels' requested rate are reasonable market rates. (Exhibit 14 & 15).

Not only are plaintiff's counsel's rates fully consistent within their market but they should expect to receive full compensation. Both state and federal law advocates for full and substantial compensation for disability civil rights attorneys:

> Per statutory provisions by the United States Congress and the California Legislature to ensure that there are attorneys willing to perform the important function of securing the rights of disabled persons to "full participation in the social and economic life of the state" and to "full and equal access," it is necessary to provide substantial compensation for this work. Encouraging competent attorneys to handle ADA Title III cases is necessary for effective enforcement: former California Attorney General Dan Lungren, in a 1993 Opinion, held that California building officials could not independently enforce the ADA, and that enforcement was left primarily to private lawsuits.

---

[1] Not exceptionally hard for Judge Wilson given that plaintiff's counsel has prosecuted more than 50 cases in front of him over the last 17 years.

*Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1075 (N.D. Cal. 2010). "Indeed, were it not for the efforts of those attorneys willing to undertake the representation of ADA plaintiffs, there would be little, if any, enforcement of this landmark statute." *Hansen v. Deercreek Plaza, LLC*, 420 F.Supp.2d 1346, 1349 (S.D.Fla. 2006).

Based on the evidence of market rate, the testimony of expert witnesses, Mr. Rolins and Mr. O'Connor, and the public interest in encouraging the private bar in enforcing the ADA, plaintiff's counsels' rates should be approved by this court.

### B.     Hours Reasonably Expended

As the first step in the calculation of an equitable award, the Court should determine the number of hours reasonably expended in this litigation: The starting point of every fee award, once it is recognized that the court's role in equity is to provide just compensation for the attorneys, must be a calculation of the attorneys' services in terms of the time he has expended on the case. Anchoring the analysis to this concept is the only approach that can claim objectivity, a claim which is 'obviously vital' to the prestige of the bar and the courts." *Serrano v. Priest*, 20 Cal.3d 25, 49 (1977), *citing Lindy Bros. Builders, Inc. of Phila. v. American Radiator*, 487 F.2d 161 (3rd Cir 1973).

Furthermore, only hours found to have been reasonably expended may be allowed. Plaintiff is not entitled to an award of attorney's fees for hours which were duplicative, unproductive, excessive or otherwise unnecessary. *Hensley*, 461 U.S. at 434. A fee applicant must exercise "billing judgment" in the preparation of the attorney's fee application; '[h]ours not properly billed to one's client are not properly billed to one's adversary pursuant to statutory authority". *Copeland v. Marshall*, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original), *quoted* in *Hensley*, 461 U.S. at 484. A fair award is the product of

reasonable hours and reasonable rates, and represents an objective basis for an initial determination of attorney's fees.

A prevailing plaintiff is entitled to his attorney's fees but, naturally, should only be entitled to attorney's fees that are reasonable incurred. Thus, if a defendant makes an offer for settlement that is rejected by the plaintiff and, ultimately, the plaintiff recovers less . . . this can be an important factor in determining whether the plaintiff acted reasonably in his continued prosecution of the case. A review of this case demonstrates that the plaintiff acted reasonably in incurring the fees in this case.

Plaintiff's complaint sought remedial relief, a $4,000 penalty under the Unruh Civil Rights Act, and reimbursement of fees and costs. See Complaint (ECF Entry #1), prayer 1-3. Plaintiff assumed that the statutory minimum award in this case was for $4,000. *See* Cal. Civ. Code § 52(a). Although it turns out that defendant 2815 CDRS, a commercial landlord and lessor of a sizeable commercial building, qualified as a "small business" and entitled to a reduction in damages to $2,000, that qualification was not claimed or supported until sprung in opposition to the plaintiff's motion for summary judgment.

The defense Answer was filed on July 10, 2014. See Answer (ECF Entry #5). There, the defense does not raise the affirmative defense (or mention) that it claimed a small business status and was entitled to reducing the sought for penalty of $4,000. On September 23, 2014, the defense served its Initial Disclosures on plaintiff pursuant to Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure. See Exhibit 3 (Initial Disclosures). Once again, there was no mention of the small business claim, no witness identified who would testify to such a claim, and not a single one of the required documents identified or provided that are necessary to support a small business reduction claim. Apparently, the defense decided to withhold these claims and documents,

although just a few months later it was submitting them in opposition to the plaintiff's motion for summary judgment. See ECF Entries 15-1 & 15-2.

On July 2, 2014, the defense submitted their *first* offer in the case. It was for $5,000 total. See Exhibit 4 (Email Exchange of 7-2-14). Given that the fees and costs alone were almost $5,000,[2] this offer was rejected but countered by the plaintiff. The defense then served a Rule 68 Offer, dated July 11, 2015, for a total of $6,500 on the plaintiff. See Exhibit 5 (Rule 68 Offer). Even with the paralegal time redacted from the billing, the plaintiff's fees and costs alone were $5167.50 by this point meaning that a fair settlement would be $9,167.50 (if a $4,000 penalty) and $7,167.50 (if a $2,000 penalty). Thus, plaintiff countered with a demand for $10,000, hoping to move toward a fair compromise position. On August 1, 2014, the defense indicated that it was not going to negotiate further and was standing firm at $6,500. See Exhibit 6 (Email Exchange dated 8-1-14). During the telephonic CMC on September 26, 2014, Magistrate Judge Stormes noted the parties' respective positions of $10,000 demand by plaintiff and $6,500 offer by the defense and suggested that the parties might look into maybe meeting in the middle at $8,000. There were no further formal offers or demands following this CMC but it is unlikely that the plaintiff would have accepted an $8,000 offer even if the defense had made it. At this point, the plaintiff's attorney's fees and costs alone were $8,242.50.

This was a case where the violation was clear. The defendant had been in clear violation of the law for over two decades. The plaintiff was only seeking a single statutory minimum damage award and reimbursement of fees and costs.

---

[2] The billing submitted to the Court as exhibit 2 only shows $3,985 incurred by July 2, 2014 but this is because the plaintiff has redacted all the paralegal time from the billing as part of his fee motion. Although most firms bill their paralegal time (and plaintiff's counsel has in the past), he has made a recent decision to not bill paralegal time going forward and considers it part of the overhead of running the firm.

The defense nickel and dimed this case, never offering the value of the case and always expecting the plaintiff to discount his claims by anywhere from 20-40%. Plaintiff was not obligated to do so and he did not act unreasonably in rejecting the defense offers. The defense never made an offer that matched the value of the case – even in light of the small business reduction. There is no basis to reduce the award due to unreasonable conduct by the plaintiff.

The case has not seen a lot of work. The plaintiff did not try and churn this case or work it up unfairly. Nonetheless, the case reasonably and necessarily involved pre-filing investigation, complaint drafting, emails, letters, phone conversations, court filings and appearances, this motion and the other trappings of a litigated case. Plaintiff's attorneys will have expended about 50 hours when this fee motion is argued. As is obvious from the billing statement (exhibit 2), there has been no overbilling in this case. All of the hours submitted to the court in the accompanying declaration of Mark Potter and the attached billing were reasonably incurred in the prosecution of this case.

### IV.   HENSLEY FACTORS

In *Hensley v. Eckerhart*, (1983) 461 U.S. 424, the Supreme Court stated that the lodestar is the "presumptively reasonable fee amount" and that the Court can adjust upward or downward by a multiplier in "rare" or "exceptional" cases only. *Id*. at 433; *Van Gerwen v. Guarantee Mutual Life*, 214 F.3d 1041, 1045 (9th Cir. 2000); *see also Welch*, 480 F.3d at 946. Additionally, the *Hensley* court outlined twelve factors that a Court may consider when determining the appropriate fee award or any departure from it. Many of the factors are already subsumed into the lodestar discussion but plaintiff will briefly discuss each factor.  Plaintiff seeks no modification of the lodestar.

### A. Time and Labor Required

As stated above, the plaintiff showed billing judgment and restraint. The case was not over litigated and plaintiff's counsel expended little more than a full work week for the entire prosecution of this case. The plaintiff seeks no multiplier as the time expended will be compensated by the lodestar.

### B. Novelty and Difficulty of Issues

The Americans with Disabilities Act itself and its interaction with California State Law is ever evolving and involves new issues and new challenges on a constant basis. Aside from the fairly novel area of Americans with Disabilities Act work in general, this case presented no significant legal issues of first impression and plaintiff seeks no multiplier based on this issue.

### C. Skill Required to Perform Legal Service

The Americans with Disabilities Act was passed in 1990 and the Unruh Civil Rights Act was amended in 1992 to incorporate the ADA. There are only a handful of attorneys with expertise in the area. Access under Title III of the Americans with Disabilities Act is predicated upon requirements to provide access to existing public accommodations, new construction and alterations to existing buildings. Those requirements in existing public accommodations turn on whether the removal of architectural barriers is "readily achievable." In turn, there is a plethora of federal regulations, Department of Justice advisory opinions, interpretive manuals and case law that is argued by both plaintiffs and defendants as to what constitutes architectural barriers and the extent of the remedial measures necessary, if any, to remove the architectural barrier. Furthermore, there is the overlaying application of Title 24 of the California Code of Regulations requirements to public accommodations which were

constructed or altered after 1982, and the American National Standards Institute (ANSI) between 1970 and 1982.

A successful prosecution of disability access cases is dependent upon a plaintiff's attorney having a thorough knowledge of the ADA and all its implementing regulations, Americans With Disabilities Act Accessibility Guidelines, Title 24 of the California Code of Regulations, ANSI standards, and the relevant sections for the California Health and Safety Code, the California Civil Code, and the California Government Code. In addition, an intimacy with the body of case law which has developed around the ADA (among which over two dozen published decisions were handled by plaintiff's counsel's office) and state statutory schemes, and the ability to couple this knowledge with a practical, strategic approach to interfacing with defendants, their own personal counsel, insurance defense attorneys, insurance carriers and the Court is absolutely essential.

In short, handling disability access cases demand the services of an attorney trained and specializing in the area of law. This case did not present specialized or skillful challenges and was a fairly straight-forward application of the law.

### D. Preclusion of Other Work

Plaintiff's attorneys have spent more than 40 hours in prosecuting this case. That time could not be used, simultaneously, for other cases or other clients. Thus, the work on this case precluded other work that could have and would have been done and billed for. Nonetheless, the lodestar fully compensates for that work.

### E. Customary Fee

As covered above, the rates and fees charged by plaintiff's counsel are market rates.

### F. Fixed or Contingent Fee

As is the case with virtually all civil rights cases, the fees in this case were contingent upon prevailing. Had the plaintiff not prevailed, the plaintiff's attorneys would not be able to recover monies to compensate them for the outlay of time spent in prosecuting this case. Nonetheless, plaintiff's counsel is not seeking a multiplier.

### G. Time Limitations

There were no unique time limitations imposed by either the client or the circumstances.

### H. Amount Involved and Results Obtained

Under the Americans with Disabilities Act, there are no damages available. The only remedy is injunctive relief. Plaintiff informally obtained the remedial relief because the defendants remedied the violations. Additionally, under his Unruh Civil Rights Act cause of action, the plaintiff was entitled to damages. Cal. Civ. § 52(a). It's difficult to measure the "damage" caused by denial of access. Thus, the Unruh Civil Rights Act has a minimum that a defendant must pay. In an Unruh case before the California Supreme Court, the defendant violated the law but argued that it had "not harmed a single hair on the plaintiff's head or subjected him to the slightest deprivation or embarrassment of any kind." *Koire v. Metro Car Wash*, 40 Cal.3d 24, 33 (1985). The Court stated, "by passing the Unruh Act, the Legislature established that arbitrary sex discrimination by businesses is per se injurious. Section 51

provides that all patrons are entitled to equal treatment. Section 52 provides for minimum statutory damages of $250 [previous minimum] for every violation of section 51, regardless of the plaintiff's actual damages." *Id*. at 33. The minimum damage award that was in effect for the plaintiff's case was $4,000 and then reduced to $2,000 because the defendant remedied the violations promptly and qualified as a small business. Courts just don't award that much money for violations that do not involve impact injury. For example, in one of the only published decision to actually identify a damage award: *Boemio v. Love's Restaurant*, 954 F.Supp. 204 (S.D. Cal. 1997), the court held a bench trial, found for the plaintiff, and awarded $1,000 (the minimum) although the plaintiff had to urinate in the parking lot. This case was no different from other access denial cases with respect to damages. It simply never involved large sums of money. The $2,000 damage award and the remedial relief obtained during the case, means that the plaintiff recovered virtually 100% of what he could recover.

### I.     Experience and Ability of Attorneys
See discussion under "Hourly Rates" above.

### J.     Undesirability of the Case
This case, like many small dollar civil rights cases, is low on the desirability scale. The clientele is largely (as in the present case) very low income or indigent. Payment is completely dependent upon winning. It is usually big business and insurance companies on the other side.

### K.     Nature and Length of Professional Relationship with Client
The Center for Disability Access has no relationship with Mr. Schutza other than in representing him in his ADA/Unruh claims.

**L.     Awards in Similar Cases.**

This matter is discussed above.

## V.   CONCLUSION

The plaintiff respectfully requests that her motion be granted and she be awarded $19,815 in attorney's fees.

Dated: March 2, 2015                                CENTER FOR DISABILITY ACCESS
                                                                     /s/ Mark Potter
                                                           By:_____
                                                           Mark Potter, Esq.
                                                           Attorneys for Plaintiff